PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 04-4112

LAURA LYNN GROCE,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-02-65)

Argued: December 3, 2004

Decided: February 28, 2005

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

_____

Affirmed in part; vacated and remanded in part by published opinion. Judge Luttig wrote the opinion, in which Judge Traxler and Judge King joined.

_____

**COUNSEL**

**ARGUED:** William Edmund Loose, Asheville, North Carolina, for Appellant. Donald David Gast, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Charlotte, North Carolina, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Appellant Laura Lynn Groce pled guilty to bank robbery under 18 U.S.C. § 2113(a). Thereafter, she proceeded to trial on the charge of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, the bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A). Following the denial of her motion for judgment of acquittal, Groce was convicted by the jury. Over Groce's objection, the district court adopted the finding of the Presentence Investigation Report (PSR) that she had "brandished" a firearm during and in relation to a crime of violence, and sentenced her accordingly. Groce appeals from the denial of her motion for acquittal and from her sentence. We affirm Groce's conviction, but vacate her sentence and remand for further proceedings.

I.

On July 26, 2002, Groce entered BB&T Bank in Murphy, North Carolina. J.A. 22-24. Groce approached the teller and gave her a note on which appeared the following text: "Please place $20,000 in this bag. I want old bills. Hundreds and 20s. Do not tell anybody. Do not trip the alarm. I have a gun. Thank you." J.A. 29. Groce took approximately $3000 from the teller, placed it in her purse, and walked out the door. J.A. 32-33. The teller did not see a gun while Groce was in the bank. J.A. 35. Groce's codefendant, Pamela Scholes, drove her away from the bank. J.A. 87.

Within minutes, the teller gave the police a complete description of Groce's car and the direction it proceeded from the bank, and the police stopped Scholes and Groce. J.A. 87. The officers who apprehended Groce searched her car and found the purse which contained the stolen money. J.A. 30, 45. The officers also found a pistol inside the purse. J.A. 45-46.

Groce was subsequently questioned by Agent Mark Aysta of the FBI. While Groce admitted that she had robbed the bank and that she had placed the gun in the car, Aysta testified that Groce told him that

"she did not take it [the gun] into the bank." J.A. 73. He further testified that Groce explained that after she was pulled over and the police began questioning her partner, she "began to stuff the cash . . . into the glove compartment [where she claimed the gun was located]. She was afraid that the gun would go off as she was attempting to stuff the money into the glove compartment, so she removed the gun from the glove compartment and put it in the bag." J.A. 68. One of the arresting officers testified that he observed Groce while his partner was questioning Groce's accomplice and that she "couldn't have gone in the glove box." J.A. 53. At trial, Groce changed her explanation, testifying that she placed the gun in the bag "sometime between the time I got into the car and I got stopped." J.A. 86.

Groce sought a judgment of acquittal, claiming that the indictment referenced the statutory citation for the prohibition of "brandishing" a firearm, 18 U.S.C. § 924(c)(1)(A)(ii), but that the government did not present evidence to the jury to prove that the firearm was brandished, as opposed to simply used, carried, or possessed. The district court concluded that brandishing was only a sentencing factor that need not be presented to the jury, and denied Groce's motion. After the jury returned its verdict, the district court sentenced Groce to 84 months imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), which provides for a seven-year minimum sentence if a firearm is "brandished."[1] J.A. 8, 167-69. Groce now appeals that sentence and the denial of her motion for acquittal.

## II.

Groce first contends that the district court erred by enhancing her sentence pursuant to section 924(c)(1)(A)(ii) because it failed to make a factual finding that Groce "brandished" a firearm during the robbery. *See* 18 U.S.C. § 924(c)(1)(A) & (ii) ("[A]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses such a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of

---

[1]The United States Sentencing Guidelines direct the district court to sentence individuals who violate § 924(c)(1)(A)(i) or (ii) to the mandatory minimum sentence in the statute. U.S.S.G. § 2K2.4(b) (2004).

imprisonment of not less than 7 years" (internal division omitted)). "Brandish" is defined as follows:

> [T]he term "brandish" means, with respect to a firearm, to display all or part of the firearm, *or otherwise make the presence of the firearm known to another person*, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

18 U.S.C. § 924(c)(4) (emphasis added). Groce agrees that, *if the gun had been present in the bank*, the presentation of the note referencing the gun would constitute the "otherwise mak[ing] [of] the presence of the firearm known to another person" within the meaning of subsection (c)(4). She contends, however, that she did not carry the gun into the bank and therefore her note could not make the *presence* of the gun (as opposed, presumably, to its *existence*) known to those persons inside the bank. Groce further argues that neither the district court nor the jury ever concluded that the gun was present in the bank.

The government first contends that even if Groce is correct that the gun remained at all times in the car, the gun was nonetheless "brandished" within the meaning of the statute. We do not agree. Because the word "presence" is not defined by the statute, the plain meaning and the context in which the word appears provide our best guide to its meaning. *See King* v. *St. Vincent's Hospital*, 502 U.S. 215, 221 (1991)("[T]he meaning of statutory language, plain or not, depends on context."). The statute defines a brandish as occurring when an individual takes one of two courses of action: either the individual "display[s] all or part of the firearm," or the individual "otherwise make[s] the presence of the firearm known." Because "otherwise" means "in a different way or manner," *Webster's Third New Int'l Dictionary* 1598 (1986), the most straightforward reading of the full statute is that the display of all or part of a firearm is one way, of which there are others, by which one may "make the presence of the firearm known." 18 U.S.C. § 924(c)(4). In such a context, the best reading of the word "presence" is the fact or condition of being "in view or at hand," because the fact that a gun is in view or at hand is exactly what the display of a gun makes known. *Webster's Third New Int'l Dictionary* 1793 (1986).

Our interpretation is further supported by the requirement that the *presence* of the firearm be made known "in order to intimidate [another] person." 18 U.S.C. § 924(c)(4). The obvious way of intimidating a person during the commission of a crime is not to make it known that a gun exists somewhere, but, rather, that the gun is present "at hand" such that it could be used.

Even if we could not conclude, on the basis of the language of the statute, that the requirement of "presence" required that the gun actually be "at hand," the term "presence" certainly does not unambiguously *include* situations where the gun is not at hand. Thus, the rule of lenity would dictate the result that we reach. *See Scheidler* v. *NOW, Inc.*, 537 U.S. 393, 409 (2003) ("When there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language" (quoting *McNally* v. *United States*, 483 U.S. 350, 359-60 (1987))).

Because we define "presence" as "in view or at hand," Groce cannot have made the gun's "presence" known to the teller if the gun was in fact *not* in view or at hand, but was in her car. Thus, Groce's minimum sentence for a "brandish" could only be enhanced upon a finding that the gun was in the bank with her, either on her person or close at hand.

The government argues that even if the gun must have been on Groce's person to support a finding that the gun was brandished, both the jury's verdict and the PSR — adopted by the district court — necessarily rested on such a finding. But, as to the PSR, the government points to no factual conclusion that *necessarily* requires that the gun was ever present in the bank. Although the government is correct that the PSR and the district court both concluded that the statute for brandishing provided the appropriate minimum sentence, J.A. 164, 185, neither clarified whether that legal conclusion rested on a factual finding that the gun was with Groce in the bank, or on what we have concluded is an error of law (*i.e.*, the belief that a brandish could occur even if the gun was in the car). The district court, then, cannot be said to have made a factual finding that a brandish, as that term is properly understood, occurred.

Likewise, the jury's verdict that Groce did use, carry, and possess a gun did not require the jury to find that the gun was in the bank, rather than in the car. The jury was instructed, in relevant part, only that

> [i]n considering whether there was active use of the firearm, you may consider evidence, if any, that the firearm was displayed or bartered or specifically referred to. In addition, the evidence must show that the firearm was carried . . . during or in relation to the crime of bank robbery. To carry a firearm means to have knowing possession or transportation of the firearm in some manner.

J.A. 142. Plainly, the jury could have found that the evidence showed that Groce had knowing possession of a gun, to which she specifically referred in her note, during or in relation to a bank robbery *even if* the jury believed that Groce's gun remained in her car to assist in her escape.

Because neither the district court nor the jury necessarily concluded that the gun was in the bank, Groce's sentence for brandishing a gun must be vacated, and the case remanded for a determination of whether the gun was in fact in the bank when the note was presented.[2]

---

[2]Groce maintains for the first time on appeal that *Blakely* v. *Washington*, 124 S. Ct. 2531 (2004), entitles her to a jury determination of whether the gun was brandished. We do not agree. Section 924(c)(1)(A)(i) itself does not set a *maximum* sentence for the use, carry, or possession of a gun absent a brandish, but rather sets a *mandatory minimum* for any sentence rendered under that subsection. The court's application of the seven-year mandatory minimum sentence based on judicial fact finding thus did not result in a sentence above the otherwise-applicable statutory maximum and was not error. *See Harris* v. *United States*, 536 U.S. 545, 568 (2002) (holding, post-*Apprendi*, that "[b]asing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments"). The factual conclusion that the gun was brandished did result in the imposition of a sentence which is higher than the five-year maximum sentence which was available *under the guidelines* for the use, carry, or possession of a gun absent a brandish. However, to the extent this increase in Groce's sentence is problematic under *United States* v. *Booker*, 125 S. Ct. 738 (2005), any problem will be remedied when the district court resentences under advisory guidelines.

### III.

Groce next claims that she was entitled to a judgment of acquittal because the jury did not find that she had brandished the gun, but only that she *used, carried, and possessed* the gun. She concedes that under *Harris*, brandishing generally "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt," because it is not an element of the offense. *Harris*, 536 U.S. at 568. However, she claims that because her indictment *cited* the statutory subsection that includes the enhancement for "brandishing," the government was required to prove the "brandish" to the jury. *See* J.A. 11; J.A. 140-41. This argument is unavailing. The Federal Rules of Criminal Procedure specifically provide that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed. R. Crim. P. 7(c)(3). *See also United States* v. *Massuet*, 851 F.2d 111, 116 (4th Cir. 1988) ("'[T]he law at present regards citations to statutes or regulations as not a part of the indictment. A conviction may be sustained on the basis of a statute or regulation other than that cited.'" (quoting Fed. R. Crim. P. 7(c)(3) advisory committee's note)). Here, Groce does not assert that she was misled or prejudiced by the inclusion of the citation applicable to brandishing of a firearm rather than to use and carry of a firearm. Therefore, she is not entitled to acquittal based on the inclusion of that citation.

### CONCLUSION

For the reasons discussed, we affirm Groce's conviction, but vacate her sentence and remand the case for further proceedings consistent with this opinion.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*