[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14606
Non-Argument Calendar

_____

D. C. Docket No. 03-00537-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT CRAWFORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 18, 2005)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Robert Crawford appeals his convictions and 125-month sentence for one

count of interference with commerce by threats or violence, in violation of 18

U.S.C. § 1951, and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). After review, we affirm Crawford's convictions, but vacate his sentence and remand for resentencing.

## I. BACKGROUND

This case is about an armed robbery at a Hardee's restaurant that was planned and executed by employees of that restaurant. A federal grand jury returned an indictment against defendants Crawford, Willie Watson, and Janita Jones, all of whom worked at Hardee's. Crawford was implicated in only two counts. Count One charged all defendants with aiding and abetting each other in the interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951. Count Two charged that all defendants, aided and abetted by each other, during and in relation to the robbery, did knowingly use, carry, and possess a firearm, in violation of 18 U.S.C. § 924(c).

Co-defendants Watson and Jones pled guilty and testified against Crawford at trial.[1] Other Hardee's employees also testified against Crawford. After a three-day trial, the jury found Crawford guilty of both counts. Because Crawford

---

[1] Co-defendant Watson pled guilty in state court to armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. Because Watson pled guilty in state court, the government dismissed the federal charges against him.

Co-defendant Jones pled guilty to Count Three of the federal indictment, which charged misprision of a felony. As a result, the government dismissed Counts One and Two of the federal indictment as to Jones.

challenges the sufficiency of the evidence to support his convictions, we recount

some of the trial evidence here.

## A. Trial Evidence

### 1. Nathan Wilson's testimony

At trial, Nathan Wilson, a Hardee's employee, testified that about five

minutes before the store closing, a man whom Wilson did not recognize entered the

store wearing a disguise. The man walked up to Wilson's cash register, pulled out

a gun, threw a bag over the counter, and told Wilson to put all of the money in the

bag.[2] Crawford, the Hardee's manager on duty, came around the corner and looked

shocked. The robber then pointed the gun at Crawford, demanding money.

Crawford opened the cash register and put the money in the bag. Based on the

robber's demands, Crawford also opened the store safe and Crawford and Wilson

put the money from the safe into the robber's bag. After the robber received the

money, he ran out of the store. Crawford then called the police.

### 2. Co-defendant Watson's testimony

Co-defendant Watson, another Hardee's employee, testified that he and

Crawford socialized outside of work. About two weeks before the robbery,

---

[2]Specifically, Wilson stated that the man "threw a bag over – over the counter and told me – and pulled out a gun and put it to me and told me to put it – put the money out the cash register in the bag and told me to give him all the money."

3

Crawford approached Watson and suggested that the two of them rob the Hardee's. Crawford told Watson that he wanted the robbery to look real, and that Watson should use a firearm during the actual commission of the robbery. The day before the robbery, Crawford provided Watson with a firearm to use during the robbery.

Watson testified that the day of the robbery, Watson arrived at the Hardee's and waited at the dumpster behind the restaurant until Crawford gave him the signal to enter the restaurant and rob it.

Several hours after the robbery, Watson and Crawford discussed the robbery over the telephone. During the conversation, Crawford told Watson that he had already taken his share of the robbery proceeds before Watson entered the store. Crawford then told him that Crawford had given co-defendant Jones, another Hardee's employee, money to keep the robbery quiet. The day after the robbery, Crawford gave Watson a ride home from work in order to pick up the firearm.

Watson testified that he initially denied involvement in the robbery when interviewed by law enforcement officers. Later in the interview, however, he admitted that he and Crawford committed the robbery. Nonetheless, Watson falsely stated to officers that Crawford had threatened him and that he had given Crawford $600 of the robbery proceeds.

On cross-examination, Crawford's attorney questioned Watson about his

marijuana use at the restaurant and Crawford's knowledge of Watson's marijuana use at the restaurant. Watson testified that Crawford smoked marijuana and allowed Watson to smoke at work as long as it was not around the customers.

While Watson was testifying about conversations he had with Crawford after the robbery, Watson remarked that Crawford stopped taking his calls "the day after [Crawford] refused to take [a] lie detector test." During an off-the-record colloquy with counsel, Crawford's attorney moved for a mistrial, which the district court agreed to consider during the next recess. Immediately after the colloquy, the district court instructed the jury as follows:

> Members of the jury, that response was unresponsive and was not prompted by the question as I view it, and you should totally disregard that statement. It hasn't got anything to do with any of the issues in this case.

At the next recess, Crawford's attorney moved again for a mistrial, which the district court denied by implication. The district court and counsel discussed possible curative instructions. Crawford's attorney, however, informed the district court that Crawford did not seek a curative instruction because it was "too late" and he did not want to overemphasize the remark about the lie detector test.

On cross-examination, Watson also testified about his agreement with the government. Watson stated that the government agreed that if Watson cooperated and testified truthfully against Crawford, the government would recommend to the

5

state court that Watson receive a two-year sentence reduction. Further, because Watson had pled guilty to the state court charges, the government dismissed the federal charges against him.

### 3. Co-defendant Jones's testimony

Co-defendant Jones, another Hardee's employee, testified that a few days before the robbery, Crawford told her that he and Watson were planning to rob the restaurant the following Sunday. Crawford told Jones that Watson was planning to rob the store with an unloaded gun and that she was going to receive some money from the robbery.

Jones worked the day of the robbery, and during the afternoon of the robbery, Crawford went to the store safe several times. At one point, Crawford left the restaurant in his car for approximately 35 to 40 minutes. Upon his return, Crawford gave Jones between $500 and $600 and told her: "This is yours. Here you go." Jones stated that when Watson came in to rob the restaurant, she hid in the back room until the robbery was over.

Jones did not immediately confess to law enforcement officers that she knew about the robbery because she was afraid of going to jail. Jones eventually told officers everything she knew about the robbery because she "felt like [she] needed to do the right thing." After her indictment, Jones cooperated with the government.

6

Jones testified that her agreement with the government did not require that she testify at Crawford's trial, and that she was testifying "to make things right with [her]self."

**4.    Brandon Davis's testimony**

Brandon Davis, a Hardee's employee, testified that approximately one month before the robbery, Crawford approached him at work and suggested that they carry out a robbery, although Crawford did not state where or when. Davis declined. Davis also testified that he smoked marijuana with other employees while working at Hardee's, and that Crawford knew about it and smoked with him.

**5.    Other testimony**

Janan Chandler, a senior security compliance analyst for Metro PCS, testified about several phone calls between Crawford and Watson based on cell phone records. Further, Paul Christensen, a district manager for the corporate franchisee of the Hardee's location, testified that Wilson looked "quite upset" and was "shaking very badly" after the robbery, but that Crawford looked "quite calm" after the robbery.

At the end of all the testimony, the district court instructed the jury regarding the credibility of cooperating witnesses. In doing so, the district court stated that the jury should "consider[] with more caution" the testimony of those witnesses.

**B.      Sentencing**

The PSI set Crawford's base offense level for Count One at 20.  The PSI also recommended six other enhancements, including: (1) a two-level role increase pursuant to § 3B1.1(c); (2) a two-level increase pursuant to § 2B3.1(b)(2)(F) because a threat of death was made; (3) a two-level increase pursuant to § 2B3.1(b)(4)(B) because a victim was restrained; and (4) a two-level increase for obstruction of justice.  With a total offense level of 28 and a criminal history category of I, Crawford's Sentencing Guidelines range was 78-97 months' imprisonment, plus an 84-month, consecutive sentence for Count Two, the firearm count.

Crawford objected to all enhancements in the PSI, arguing that there was insufficient evidence to support them.  Prior to sentencing, Crawford filed a sentencing memorandum arguing that under Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), the enhancements could not be applied because they were not proven to a jury beyond a reasonable doubt.

At sentencing, Crawford also argued that based on Blakely his conviction on Count Two should carry a mandatory-minimum sentence of five years, not seven, because the indictment charged that he "used, carried, and possessed a firearm" and the jury did not find that he "brandished the firearm."  The district court denied

8

the motion to apply <u>Blakely</u> because it was "presently operating under the theory that <u>Blakely</u> does not set aside the Sentencing Guidelines."

Ultimately, the district court sustained all of Crawford's objections to the enhancements, except for the § 3B1.1(c) enhancement for his role in the offense. The district court found that Crawford clearly was the person who devised the scheme, organized it, and recruited those who participated with him. The base offense level of 20, plus the two-level role enhancement, resulted in a total adjusted offense level of 22, which reduced Crawford's Guidelines range from 78-97 months' imprisonment to 41-51 months' imprisonment.

The district court sentenced Crawford to 41 months' imprisonment on Count One, and 84 months' imprisonment on Count Two, to run consecutively. The 84-month consecutive sentence represented the seven-year, statutory mandatory minimum under 18 U.S.C. § 924(c)(1)(A)(ii). The district court specifically stated that, because Crawford came to the "court with no criminal record whatsoever and because of everything that has been said on his behalf by family members and friends, the court will impose the low end of [the Guideline range]." The district court also stated that "[i]t is the court's view, all things considered, based on the applicable guidelines, that a sentence at the low end of the guideline range for Count One, coupled of course with the mandatory penalty for Count Two meets the

9

sentencing goals of punishment and deterrence."

## II. DISCUSSION

### A.    Sufficiency of the Evidence

On appeal, Crawford argues that there was insufficient evidence to support his convictions because the credibility of two of the government's witnesses – Jones and Watson – was so questionable as to be unreliable as a matter of law.[3] We disagree that their testimony was unreliable as a matter of law. Rather, their credibility was an issue for the jury to decide. Indeed, both Watson and Jones were extensively questioned on direct and cross-examination regarding their self-interest, including their plea bargains. Further, each witness's initial denials and false statements to law enforcement officers were thoroughly explored on both direct and cross-examination. The district court also instructed the jury regarding the credibility of cooperating witnesses.

In addition, if the jury believed Watson, Jones, and the government's other witnesses, there was more than ample testimony to support Crawford's § 1951 conviction. "Two elements are essential for a Hobbs Act [18 U.S.C. § 1951]

_____

[3]This Court reviews "de novo whether there is sufficient evidence to support the jury's verdict." United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003). "A jury's verdict will be affirmed 'if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt.'" Id. (citation omitted). This Court views the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor in determining a sufficiency of the evidence claim." Id. (internal quotation marks and citation omitted).

prosecution: robbery and an effect on commerce." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). At trial, the interstate-commerce requirement was undisputed. As to Crawford's role in the robbery, both Jones and Watson testified that Crawford was involved in the planning and execution of the robbery. Additionally, Davis testified that Crawford approached him at work and suggested that they carry out a robbery.

There also was sufficient evidence to support Crawford's firearms conviction under 18 U.S.C. § 924(c). To prove an aiding and abetting charge under § 924(c), "'the government must demonstrate that a substantive offense was committed, that the defendant associated himself with the criminal venture, and that he committed some act which furthered the crime.'" United States v. Thomas, 987 F.2d 697, 701-02 (11th Cir. 1993) (quoting United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990)).[4] Additionally, the conviction "must be supported by evidence directly showing [defendant's] knowledge that a gun would be used in the commission of the offense." Id. at 702 (quotation marks and citation omitted).

In this case, while Crawford himself did not use the firearm, Watson admitted to using a firearm during the robbery, and testified that Crawford

_____

[4]To prove the substantive offense under § 924(c), the government must show: (1) that the defendant used or carried a firearm, and (2) that the use or carrying was during and in relation to a crime of violence or drug trafficking crime. Smith v. United States, 508 U.S. 223, 227-28, 113 S. Ct. 2050, 2053 (1993).

11

provided the firearm to Watson to use during the robbery.

Accordingly, we conclude that there was sufficient evidence to support Crawford's two convictions.

**B.      Denial of Motion for Mistrial**

We also conclude that the district court did not abuse its discretion in denying Crawford's motion for a mistrial because the district court timely gave a curative instruction directing the jury to disregard Watson's statement about the lie detector test as unresponsive and irrelevant to any issues in the case. See United States v. Russo, 796 F.2d 1443, 1453 (11th Cir. 1986) (concluding that any prejudice resulting from reference to polygraph was cured by district court's cautionary instruction); see also United States v. Walton, 908 F.2d 1289, 1293 (6th Cir. 1990) ("Even the circuits which have held that polygraph evidence is generally inadmissible have allowed an inadvertent statement concerning the evidence to be remedied by a curative instruction.").[5]

In light of the district court's curative instruction and the ample evidence in this case, Crawford has not shown that "the evidence is so highly prejudicial as to be incurable by the trial court's admonition." United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003) (quotation marks and citation omitted); see also

_____

[5]We also note that the government did not ask Watson about the lie detector test, but Watson inadvertently mentioned it in response to another question.

United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir. 1996) (noting that this Court presumes that the jury follows the district court's instructions). Because the district court's immediate curative instruction was sufficient to mitigate any prejudice that might have resulted from Watson's inadvertent remark regarding the lie detector test, the district court did not abuse its discretion by denying Crawford's motion for mistrial.

## C.    Evidence of Marijuana Use

The district court also did not abuse its discretion by allowing the government to examine Davis regarding Crawford's alleged use of marijuana at work.[6] Defense counsel for Crawford first injected the marijuana use by cross-examining Watson about Watson's marijuana use at work and Crawford's knowledge of it. During Watson's testimony, Watson testified that Crawford knew that Watson used marijuana at work and also that Crawford himself smoked at work. Davis's testimony about the marijuana use at the restaurant, specifically Crawford's marijuana use, corroborated Watson's testimony, which Crawford's counsel elicited.

In any event, we conclude that any error was harmless and does not require

---

[6]This Court reviews "a district court's evidentiary rulings for abuse of discretion." United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir.), cert. denied, 124 S. Ct. 2829 (2004).

13

reversal. "We find an error harmless where 'the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict.'" United States v. Dickerson, 248 F.3d 1036, 1048 (11th Cir. 2001) (quoting United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992)). As discussed above, there was ample evidence uninfected by the error to support the verdict. See Dickerson, 248 F.3d at 1048; Fortenberry, 971 F.2d at 722. In light of the evidence of Crawford's guilt, we conclude that the district court's admission of this evidence had no substantial impact on the jury's verdict.

**D.    Sentencing Issue as to Count One**

Crawford also argues that his sentence violates Blakely because the district court applied a two-level enhancement for his role in the offense based upon impermissible judicial fact-finding. Because Crawford raised his Blakely objection in the district court and in his initial brief on appeal, we review his sentence de novo. United States v. Paz, – F.3d –, 2005 WL 757876, at *2 (11th Cir. April 5, 2005).

In Booker, a majority of the Supreme Court concluded that the mandatory nature of the Guidelines made them incompatible with the Sixth Amendment's guaranty of the right to a jury trial where "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the

14

facts established by a plea of guilty or a jury verdict [was not] admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. There was sufficient trial evidence to support the district court's fact-finding as to this role enhancement, and the district court correctly determined the proper Guidelines range for Crawford's conviction on Count One is 41-51 months' imprisonment. Nonetheless, Crawford's Sixth Amendment rights were violated because Crawford's sentence was enhanced, under a mandatory Guidelines system, based on facts not found by a jury or admitted by Crawford. The Sixth Amendment violation stemmed not from the district court's extra-verdict enhancement, but from the district court's use of that extra-verdict enhancement in sentencing Crawford in a mandatory Guidelines scheme. United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005).

After reviewing the record, we further conclude that the government has failed to meet its burden to show that the constitutional error as to the sentence in Count One was harmless. See Paz, 2005 WL 757876, at *2-3.[7] Thus, we vacate Crawford's sentence and remand for resentencing. On remand, the district court is

_____

[7]"To find harmless error, we must determine that the error did not affect the substantial rights of the parties." Paz, 2005 WL 757876, at *2 (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)). "A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt." Id. (internal quotation marks, brackets, ellipses and citation omitted).

required to sentence Crawford under an advisory Guidelines regime, and shall consider the Guidelines range of 41-51 months' imprisonment for Count One, and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.

**E.    Sentencing Issue as to Count Two**

Crawford also maintains that his mandatory minimum sentence on Count Two violates Blakely and Booker because the judge, not a jury, determined that his co-defendant Watson "brandished" the firearm during the robbery.  We first note that the trial evidence showed that co-defendant Watson pointed the firearm at Wilson during the robbery, and thus the district court's fact-finding that Watson brandished the firearm is supported by the evidence.

The more serious hurdle Crawford faces on appeal is that this 84-month sentence on Count Two is caused by a judicial fact-finding related to the statutory mandatory minimum set forth in 18 U.S.C. § 924(c)(1)(A)(ii), which the United States Supreme Court has expressly held does not violate the Fifth and Sixth Amendments.  Harris v. United States, 536 U.S. 545, 568-69, 122 S. Ct. 2406, 2420 (2002).

In Harris, the Supreme Court determined that whether or not a firearm was brandished for the purposes of the statutory mandatory minimum in §

16

924(c)(1)(A)(ii) is a sentencing factor to be determined by the judge, and is not an element of the offense that must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt. Harris, 536 U.S. at 556, 122 S. Ct. at 2414. Specifically, the Supreme Court stated that "[b]asing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments." Harris, 536 U.S. at 568, 122 S. Ct. at 2420 (emphasis added).

Because Harris is directly on point as to a judicial fact-finding about brandishing that triggers the statutory mandatory minimum sentence in § 924(c)(1)(A)(ii), it controls as to whether the Fifth or Sixth Amendment is violated by a judge, rather than a jury, determining whether a gun was brandished for the purposes of § 924(c)(1)(A)(ii).

We recognize that the Supreme Court's Harris decision came after Apprendi,[8] but before Booker. However, Booker did not addresses mandatory minimum sentences or Harris and,[9] at least at this juncture, we remain bound to apply Harris. See United States v. Orduno-Mireles, – F.3d –, 2005 WL 768134, at

---

[8]Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

[9]The Supreme Court did not explicitly mention Harris or mandatory-minimum sentences in either of its majority opinions in Booker. In Blakely, the Supreme Court distinguished its line of mandatory-minimum cases on the ground that those cases did not involve "a sentence greater than what state law authorized on the basis of the verdict alone." Blakely, 124 S. Ct. at 2538.

*2 (11th Cir. April 6, 2005) ("We have held that <u>Almendarez-Torres</u> remains the law until the Supreme Court determines that <u>Almendarez-Torres</u> is not controlling precedent.") (internal quotation marks and citation omitted).[10]

Additionally, two other circuits post-<u>Booker</u> have cited <u>Harris</u> and noted that pursuant to <u>Harris</u>, judicial fact-finding under § 924(c)(1)(A)(ii) is not error. <u>See</u> <u>United States v. Groce</u>, 398 F.3d 679, 682 n.2 (4th Cir. 2005) (citing <u>Harris</u> and stating that "[t]he court's application of the seven-year mandatory minimum sentence based on judicial fact finding thus did not result in a sentence above the otherwise-applicable statutory maximum and was not error"); <u>United States v. Harris</u>, 397 F.3d 404, 414 n.5 (6th Cir. 2005) (noting that "in light of <u>Harris</u>," the mandatory minimum sentence related to brandishing "continue[s] to bind sentencing judges").

Thus, being bound by <u>Harris</u>, we are required to conclude that there is no Fifth or Sixth Amendment violation in this case.

This does not end our analysis because Crawford was sentenced under a mandatory Guidelines system and thus we must determine whether there is

---

[10]<u>See also</u> <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921-22 (1989), in which the Supreme Court stated that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

18

statutory Booker error in Count Two. Section 2K2.4 of the Guidelines provides that "the guideline sentence [for a § 924(c) violation] is the minimum term of imprisonment required by statute." U.S.S.G. § 2K2.4(b). Thus, as to this § 924(c) offense, there was no Guidelines range binding the district court to create statutory Booker error. Rather, the statutory mandatory minimum sentence in § 924(c) governs Crawford's sentence on Count Two.

However, even if this Court assumes arguendo that some statutory error exists under Booker because Crawford was sentenced under a mandatory guideline system that required the district court to apply § 2K2.4, any error is corrected by the fact that we are already remanding this case for re-sentencing under an advisory Guidelines scheme.

### III. CONCLUSION

Upon review of the record, we find no reversible error as to Crawford's convictions. Thus, we affirm Crawford's convictions. Upon review of the record, we do find reversible error as to Crawford's sentence. Thus, we vacate Crawford's sentence in its entirety and remand for resentencing pursuant to Booker.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

19