**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-4377**

———————

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

MARTIN SIMMONS, a/k/a Travis Green, a/k/a Marty Raashan
Simmons, a/k/a Marty, a/k/a Martin Raashan Simons, a/k/a
Martin Rahshan Simons,

               Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, Senior
District Judge.  (2:09-cr-00467-PMD-1)

———————

Argued:  May 13, 2011           Decided:  July 5, 2011

———————

Before MOTZ, DAVIS, and KEENAN, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by unpublished
opinion.  Judge Keenan wrote the opinion, in which Judge Motz
and Judge Davis joined.

———————

**ARGUED:** John Robert Haley, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, South Carolina, for Appellant.  Sean
Kittrell, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South
Carolina, for Appellee.  **ON BRIEF:** William N. Nettles, United
States Attorney, Columbia, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

Martin Simmons was convicted, upon his plea of guilty, of one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). When entering his guilty plea, Simmons reserved his right to appeal the district court's denial of his motion to suppress evidence of the firearm. The district court sentenced Simmons to a term of 110 months' imprisonment.

On appeal, Simmons argues that the district court erred: 1) in denying his motion to suppress; and 2) in applying a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6). We conclude that the district court did not err in denying Simmons' motion to suppress and, therefore, affirm Simmons' conviction. However, because we conclude that the district court erred in applying the sentencing enhancement, we vacate Simmons' sentence and remand the case for resentencing.

I.

A.

Around 4:28 a.m. on February 14, 2009, a "dispatch" issued by the police department of the City of Charleston, South Carolina, alerted officers on duty about reports of gunfire occurring at the corner of Hanover and Amherst Streets. Officer Flaherty, who first responded to the scene, walked around the

2

area and reported by radio to Officer Michael Moody and Officer Vachowski that Flaherty did not observe any individuals in the area.[1]

Around the same time, Officer Moody and Officer Vachowski were driving south on Nassau Street, headed toward the intersection of Nassau and Amherst Streets. The police officers observed Simmons and another man walking quickly, turning from Amherst Street onto Nassau Street in a northbound direction. At that time, Simmons and his companion were located about one block from the area where the gunfire reportedly had occurred. Officer Moody considered this location as being a "high crime" area.

Officer Moody and Officer Vachowski approached Simmons and his companion. Officer Moody told the men about the reports of gunfire and asked, "Did you guys happen to hear anything?" Simmons nodded his head, and stated that he was leaving the area because he had heard the gunfire.

Officer Moody asked Simmons whether he was carrying any weapons, and Simmons replied that he was not. When Officer Moody asked Simmons if he could conduct "a quick pat down for weapons," Simmons agreed.

---

[1] The record does not reflect the first names of Officer Flaherty and Officer Vachowski.

3

As Officer Moody began conducting a pat-down search of Simmons' pants, Simmons leaned the right side of his body against a building, thereby preventing Officer Moody from feeling Simmons' right side. To reposition Simmons' body, Officer Moody placed his hands on Simmons' hips.

As Officer Moody's left hand moved across the front of Simmons' hips, Officer Moody felt an object in Simmons' right front pocket and sensed that the object was a firearm. When Officer Moody asked, "Hey, what [is] this?" Simmons ran away.

Officer Moody chased Simmons along Amherst Street. After Officer Moody observed Simmons reach into his right pocket and throw a metallic object onto the ground while continuing to run, Officer Moody reported by radio to Officer Flaherty that Simmons was running toward Officer Flaherty. Simmons eventually was apprehended by Officer Flaherty and another police officer.

The police officers recovered the metallic object that Simmons discarded, which they identified as a .357 caliber revolver. The firearm contained two spent rounds of ammunition, and four unspent rounds of ammunition. The police officers also found additional ammunition inside Simmons' pockets.

B.

In April 2009, a grand jury indicted Simmons on the single count of possession of a firearm by a convicted felon. Simmons filed a motion to suppress evidence of the firearm, arguing that

4

the police seized the weapon as a result of an unlawful seizure of his person in violation of the Fourth Amendment.

The district court denied Simmons' suppression motion, holding that the police officers had reasonable suspicion to stop and frisk Simmons pursuant to Terry v. Ohio, 392 U.S. 1 (1968). The district court alternatively concluded that Simmons consented to the stop and frisk.

Following Simmons' guilty plea and conviction, a probation officer prepared a presentence report (PSR) recommending that Simmons receive a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight, and a three-level downward reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. The government objected to the PSR, arguing that instead of a two-level enhancement for obstruction of justice, Simmons should receive a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for possessing a firearm in connection with another felony.[2]

---

[2] According to the government, Simmons possessed the firearm in connection with two felony offenses under South Carolina law: discharging a firearm at or into a dwelling in violation of South Carolina Code § 16-23-440, and pointing a firearm at any person in violation of § 16-23-410. However, because the district court did not apply an enhancement based on either of these two offenses, we do not address whether they would have been applicable in the present case.

At the sentencing hearing, the district court concluded that Simmons qualified for a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), finding that Simmons possessed a firearm in connection with another felony, namely, resisting arrest with a deadly weapon. The resulting offense level of 25, when combined with a criminal history category of VI, yielded a guidelines range of 110 to 120 months' imprisonment. Based on this guidelines range, the district court sentenced Simmons to a term of 110 months' imprisonment.

II.

A.

We first consider whether the district court erred in denying Simmons' motion to suppress evidence of the firearm. We review the factual findings underlying the district court's denial of the motion to suppress for clear error, and the court's legal conclusions de novo. United States v. Blake, 571 F.3d 331, 338 (4th Cir. 2009). A factual finding is clearly erroneous if this Court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 337 (4th Cir. 2008) (internal quotation marks omitted). When the district court has denied a motion to suppress, we construe the evidence in the

6

light most favorable to the government. United States v. Farrior, 535 F.3d 210, 217 (4th Cir. 2008).

Simmons contends that the police officers unlawfully seized him at the time that they initially approached and questioned him and his companion. According to Simmons, the police officers lacked reasonable suspicion to conclude that he was engaged in criminal activity.

A person is seized for purposes of the Fourth Amendment when a police officer, "by means of physical force or show of authority," restrains that person's freedom of movement. United States v. Mendenhall, 446 U.S. 544, 553 (1980); see Terry, 392 U.S. at 19 n.16. Conversely, a voluntary encounter between the police and a citizen does not constitute a seizure prohibited by the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 434 (1991). Thus, even when police officers do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and ask questions without violating the Fourth Amendment. See id. at 435; United States v. Lewis, 606 F.3d 193, 197-98 (4th Cir. 2010).

The Supreme Court has acknowledged that most individuals will feel obligated to respond when asked questions by a police officer, but has held that this fact alone will not convert a consensual encounter into a seizure. INS v. Delgado, 466 U.S.

7

210, 216 (1984). The Court has explained that a contrary conclusion would create constitutional barriers to everyday encounters between the police and individual citizens, imposing unrealistic burdens on "a wide variety of legitimate law enforcement practices." Mendenhall, 446 U.S. at 554. Thus, the Supreme Court has concluded that an encounter between the police and a citizen does not constitute a seizure unless, taking into account all the circumstances of the encounter, "a reasonable person would . . . believe[] that he was not free to leave." Id.

If the person being questioned by the police objectively "remains free to disregard the questions and walk away," there is no demonstrable restriction on the person's liberty and the encounter does not result in a seizure. Id. Some factors that might indicate the occurrence of a seizure include the threatening presence of several police officers, their display of weapons, a physical touching of the person to whom the questions are directed, and the use of language indicating that compliance with the police request is required. Id.; United States v. Perry, 560 F.3d 246, 253 (4th Cir. 2008).

Upon review of the present record, we conclude that the evidence supports the district court's conclusion that the police officers' initial encounter with Simmons was consensual. At the beginning of the encounter, Officer Moody and Officer

8

Vachowski merely approached Simmons and his companion on a public street and asked whether they had heard gunfire. When Simmons replied that he had heard gunfire and was walking away from the area for that reason, Officer Moody asked Simmons if he was carrying a weapon. Simmons voluntarily responded that he was not. The police officers did not tell Simmons that he was required to stay and answer their questions, and Simmons did not make any attempt to leave.

The evidence refutes Simmons' contention that the only reason he was stopped was "because he was a black man walking in a predominantly black neighborhood," about 4:30 a.m. Based on the officers' testimony, which the district court accepted, Officer Moody and Officer Vachowski approached Simmons and his companion in furtherance of their investigation of the reported gunfire in that area. Simmons responded freely to Officer Moody's questions and did not express any reluctance to speak with him. Thus, considering all these circumstances, the initial encounter between the officers and Simmons was consensual and did not constitute a seizure of Simmons' person, because the record failed to show that "a reasonable person would . . . believe[] that he was not free to leave." See Mendenhall, 466 U.S. at 554.

Simmons argues, nonetheless, that his motion to suppress should have been granted because the evidence failed to support

9

the district court's finding that Simmons initially consented to the pat down of his person. Simmons' argument, however, fails to acknowledge that Officer Moody testified that Simmons agreed to a "brief pat down" for weapons. It was only when Simmons leaned the right side of his body against a building and Officer Moody attempted to reposition him, that Simmons exhibited a reluctance to act in accord with his initial consent. Simultaneously with this attempted repositioning, Officer Moody felt the object in Simmons' pocket that Moody thought was a firearm.

Although Officer Moody acknowledged that a suspect's act of leaning in one direction before a pat-down search "usually" is inconsistent with consent, the district court nevertheless found that Simmons "was hoping to get beyond the moment. He was talking on the phone. He postured himself in a way that perhaps the pistol wouldn't be found. But when it was, he was prepared to run." Thus, the district court found "it credible that the officer said that [Simmons] gave consent, but upon finding the pistol, [Simmons] fled." Accordingly, based on this record, the district court's factual finding that Simmons consented to the pat-down search prior to fleeing from the officers is not clearly erroneous.

We further observe that once Officer Moody felt on Simmons' person an object Officer Moody thought was a firearm and Simmons

10

immediately ran away from the officers, the officers had, at minimum, reasonable suspicion to detain Simmons for further investigation. See Terry, 392 U.S. at 30. When Simmons was observed to discard the firearm during the officers' ultimately successful effort to apprehend him, he abandoned any residual expectation of privacy he may have harbored in respect to his possession of the firearm. Thus, we hold that the district court did not err in denying Simmons' motion to suppress evidence of the weapon discarded by Simmons at the scene of the crime.

B.

The next issue we consider is whether the district court erred in applying a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6). A district court's determination that such an enhancement is applicable is a factual finding, which we review for clear error. United States v. Carter, 601 F.3d 252, 254 (4th Cir. 2010).

Section 2K2.1(b)(6) provides for a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Before applying the enhancement, a district court must conclude that the defendant committed a separate felony offense. See United States v. Blount, 337 F.3d 404, 406-07 (4th Cir. 2003). In this case, the district court applied the §

11

2K21.1(b)(6) enhancement based on the court's conclusion that Simmons had "resist[ed] arrest with [a] deadly weapon," an offense that is a felony under South Carolina Code § 16-3-625.

To determine whether Simmons committed a felony offense under South Carolina Code § 16-3-625, we examine the express language of that statute. The statutory language defines "resisting arrest with [a] deadly weapon" as "resist[ing] the lawful efforts of a law enforcement officer to arrest [the defendant] or another person with the use or threat of use of a deadly weapon against the officer, and the [defendant] is in possession or claims to be in possession of a deadly weapon." S.C. Code § 16-3-625.

According to Simmons, the act of discarding a weapon while fleeing from police officers is not sufficient to establish that he "use[d]" or "threat[ened] to use" a dangerous weapon within the meaning of § 16-3-625. The government contends, however, that Simmons "used" a dangerous weapon by retrieving the loaded firearm from inside his pants pocket and discarding it. We disagree with the government's position.

Although the terms "use" and "threat of use" are not defined in South Carolina Code § 16-3-625, we interpret those terms based on their plain meaning and the context in which they are employed. See United States v. Groce, 398 F.3d 679, 681 (4th Cir. 2005). The language of the statute requires that a

12

person "use," or make a "threat of use," of a deadly weapon "against" a law enforcement officer. S.C. Code § 16-3-625.

The evidence in this case showed that Simmons was not holding the weapon in his hand when he was confronted by the officers. Instead, after the police officers approached Simmons, Officer Moody conducted a pat-down search of Simmons' person, feeling what Moody thought was a weapon in Simmons' front right pocket. When Simmons fled from the police, the weapon remained in his pocket. As he was running away, Simmons reached into his pocket and discarded the weapon.

This evidence does not show that Simmons, by discarding the weapon, "used" the weapon, or made a "threat of use" of the weapon, to impede Officer Moody's pursuit or to defend "against" the officers' attempt to capture him. Thus, we conclude that Simmons's "use" or "threat of use" of the weapon, if any, did not constitute a "use" or "threat of use" "against" a law enforcement officer, as required by the plain language of the statute. Accordingly, we hold that Simmons did not "resist[] arrest with [a] deadly weapon," as prohibited by South Carolina Code § 16-3-625, and that the district court clearly erred in applying the § 2K2.1(b)(6) enhancement based on the court's contrary conclusion that Simmons committed a felony offense under that statute.

13

III.

For these reasons, we affirm Simmons's conviction, but we vacate his sentence.  We remand the case to the district court for resentencing.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED