United States Court of Appeals,

Eleventh Circuit.

No. 96-8775.

UNITED STATES of America, Plaintiff-Appellee,

v.

Frank J. HERNANDEZ, Defendant-Appellant.

Nov. 9, 1998.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR495-170), B. Avant Edenfield, Judge.

Before TJOFLAT, BIRCH and MARCUS[*], Circuit Judges.

TJOFLAT, Circuit Judge:

I.

In April 1993, Frank J. Hernandez, the owner and operator of a number of business enterprises in southern Georgia, filed three voluntary petitions in the bankruptcy court for the Southern District of Georgia. Hernandez sought relief under Chapter 11 of the United States Bankruptcy Code for himself, personally, and for two of his business enterprises.[1] These Chapter 11 cases were consolidated on June 7, 1993, and later converted to Chapter 7 cases because the debtors were insolvent. During the pendency of both the Chapter 11 and Chapter 7 proceedings,

---

[*]Honorable Stanley Marcus was a U.S. District Judge for the Southern District of Florida, sitting by designation as a member of this panel, when this appeal was argued and taken under submission. On November 24, 1997, he took the oath of office as a United States Circuit Judge of the Eleventh Circuit.

[1]On April 21, 1993, Classic Collision and Insurance Repairs, Inc., filed for relief under Chapter 11, and on April 29, 1993, Classic Auto Painting and Bodyworks, Inc., did the same. Frank Joseph Hernandez d/b/a/ Classic Auto Painting and Bodyworks also filed for relief on April 21, 1993.

Hernandez committed fraud on the bankruptcy court by concealing assets and liabilities and appropriating funds paid to his businesses by its customers.

On August 10, 1995, a grand jury returned a thirteen-count indictment against Hernandez, charging him with bankruptcy fraud in violation of 18 U.S.C. § 152 (1994). On March 4, 1996, pursuant to a plea agreement, Hernandez pled guilty to five counts of the indictment.[2] Sentencing was scheduled for June 13, 1996, following the preparation of a presentence investigation report (PSI) by the court's probation office.

At the sentencing hearing, Hernandez objected to several factual statements in the PSI on the ground that the information supporting the statements was unreliable. This information had been provided by the FBI agent who investigated the case. The agent testified at the hearing and, after entertaining argument from counsel, the district court found that the challenged information was reliable. Following the testimony of two defense witnesses—a physician who said that Hernandez suffered from angina and was recovering from a heart attack, and a psychiatrist who said that Hernandez had an IQ of 84 and had difficulty paying attention to detail—the court adopted as its findings of fact the factual statements contained in the PSI.

According to the PSI, the Sentencing Guidelines, *see* United States Sentencing Commission, *Guidelines Manual* (Nov. 1, 1995), ranked Hernandez' offenses at level sixteen on the offense severity scale, and his criminal history as category I. This combination yielded a sentence range of twenty-one to twenty-seven months. The probation officer who prepared the PSI recommended that the court make an upward departure to category III with respect to Hernandez' criminal history level,

---

[2]As part of that plea agreement, the Government agreed to dismiss the remaining eight counts of the indictment. These counts were dismissed at Hernandez' sentencing hearing.

2

which would yield a sentence range of twenty-seven to thirty-three months. After hearing from the parties on the issue, the court fixed Hernandez' criminal history category at II, which, combined with his offense level of sixteen, yielded a sentence range of twenty-four to thirty months. Then, following Hernandez' allocution, the court imposed sentence: thirty months imprisonment on each count, with the terms to run concurrently, to be followed by a three-year term of supervised release, and a fine of $3,000 on each count, for a total of $15,000.

After imposing sentence, the court elicited the parties' objections, in accordance with Eleventh Circuit precedent. *See United States v. Jones,* 899 F.2d 1097, 1102 (11th Cir.1990), *overruled on other grounds by United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc). The Government had no objections. Hernandez renewed the objections he had made to the PSI prior to the sentencing hearing, as indicated above; he did not, however, make any new objections. Specifically, he did not object to the court's imposition of the $15,000 fine or the sentences of imprisonment.

II.

Hernandez now appeals his sentences, presenting four claims of error. First, he contends that the district court erred by: (1) fining him $15,000 when the PSI suggested he would be unable to pay a fine; (2) including the proceeds from the sale of two cars in the calculation of loss under U.S.S.G. § 2F1.1(b)(1) used to determine his base offense level; (3) failing to decrease his base offense level by two points under U.S.S.G. § 3E1.1(a) for his acceptance of responsibility; and (4) making, in accordance with U.S.S.G. § 4A1.3, an upward departure from criminal history category I to criminal history category II. We address these claims in order.

A.

Hernandez contends that the district court erred by imposing the $15,000 fine because he is unable to pay a fine. In support of this contention, he cites the PSI, which states that "the defendant does not have the ability to pay a fine within the applicable fine range." Unfortunately for Hernandez, his attorney made no objection at the sentencing hearing to the district court's imposition of the fine. As a result, we review the court's decision for plain error, and will only upset the decision if disregarding the error would result in "manifest injustice." *See Jones,* 899 F.2d at 1103. "This court has equated the manifest injustice inquiry with review under the plain error doctrine." *United States v. Newsome,* 998 F.2d 1571, 1579 (11th Cir.1993).

The Sentencing Guidelines *require* courts to "impose a fine in all cases, except where *the defendant establishes* that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). It is clear from section 5E1.2 that the burden is on the defendant to prove an inability to pay the fine. If the sentencing court concludes that a fine is appropriate, the Guidelines Manual lists several factors it should consider in determining the amount of the fine.[3] Circuits are split on whether a court must make specific factual findings with respect

---

[3]The Sentencing Guidelines list the following considerations as important in determining the appropriate fine:

(1) the need for the combined sentence to reflect the seriousness of the offense ..., to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the

4

to these factors. *See United States v. Lombardo,* 35 F.3d 526, 529 (11th Cir.1994). While some circuits require that the district court make specific findings, *See id.,* we have adopted the less rigid approach, and do not require the sentencing court to make specific findings of fact with respect to the Sentencing Guideline factors as long as " "the record reflect[s] the district court's consideration of the pertinent factors prior to imposing the fine.' " *Id.* at 530 (quoting *United States v. Washington-Williams,* 945 F.2d 325, 328 (10th Cir.1991)). Of course, when the record provides no guidance as to the court's reason(s) for imposing a fine, we must remand the case so that the necessary factual findings can be made. *See United States v. Rowland,* 906 F.2d 621, 624 (11th Cir.1990).

Had Hernandez objected to the fine, the district court could have addressed more specifically on the record its reasons for imposing the fine. That was the purpose of our holding in *Jones:* requiring the district court to seek objections from both parties after the pronouncement of the sentence "serve[s] the dual purpose of permitting the district court to correct on the spot any error it may have made and of guiding appellate review." *Jones,* 899 F.2d at 1102. Perhaps the court would have, in the face of such an objection, made more specific findings on the record regarding Hernandez' ability to pay, or after hearing evidence of his financial status, it may have imposed a lesser fine—perhaps even a fine below that prescribed by the Sentencing Guidelines. Hernandez did not make such an objection, however, and therefore the district court had no notice of the need

---

defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

U.S.S.G. § 5E1.2(d).

to make further findings with respect to the fine. As a result, there is nothing in the record to guide us in our review of the court's judgment.

While it is unclear what factors the court relied upon in imposing the fine, the record suggests that Hernandez may be able to pay a $15,000 fine. For example, Hernandez owned a $500,000 home and a $500,000 yacht immediately prior to seeking bankruptcy relief. In addition, the PSI indicates that he was waiting until after the bankruptcy proceedings concluded to accept the remaining payments due on his sale of a Dairy Queen franchise. Finally, his unwillingness to answer specific questions concerning his financial dealings put to him by the probation officer who prepared the PSI may permit the inference that he is still concealing assets from the bankruptcy trustee. Given these circumstances, we conclude that sustaining the imposition of the $15,000 fine will not result in manifest injustice. We therefore affirm the district court's imposition of the fine.

B.

Hernandez' second assignment of error involves the inclusion of $22,100—proceeds from the auction sale of two of his automobiles—in the amount used to determine his base offense level. In conjunction with Hernandez' bankruptcy proceedings, the FBI case agent located two automobiles—a Dodge Intrepid and a Chevrolet Corvette—for sale on the grounds of a business owned by Hernandez' brother. The contact telephone number found on the cars was that of Hernandez. The agent notified the bankruptcy trustee, who moved the bankruptcy court to have the cars seized for fear that Hernandez would conceal the proceeds derived from their sale. The court granted the motion, and the trustee seized the cars and sold them at a public auction.

Hernandez argues that the inclusion of these funds in the calculation of loss for sentencing purposes was improper. Under the Guidelines Manual, a court may use, in calculating the base

6

offense level, the loss that a defendant intended to inflict through fraudulent conduct, if that intended loss is greater than the actual loss, and if the loss can be determined. *See* U.S.S.G. § 2F1.1, comment. (n.7). The court must make that determination consistent with section 2X1.1, *see id.,* which permits adjustments to a base offense level "for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Hernandez argues that this language forces the Government, in its attempt to show intended loss, to demonstrate the facts of its case to a higher standard—with reasonable certainty—than the normal preponderance of the evidence standard. According to Hernandez, the Government failed to show with reasonable certainty that the cars belonged to Hernandez and that he intended to conceal their sale proceeds from the bankruptcy trustee. We review the district court's determination of the amount of loss for clear error. *See United States v. Toussaint,* 84 F.3d 1406, 1407 (11th Cir.1996).

In *Toussaint,* the court included in the amount of loss $360,000 in disaster loan proceeds that Toussaint had fraudulently claimed in the aftermath of Hurricane Andrew, even though he never actually received the funds. The court did not accept Toussaint's claim that this amount should not be included in the loss calculation for sentencing purposes. *See id.* "The fact that no loss occurred is immaterial to the inquiry of whether Toussaint intended to keep the loan amount; it is this intent, whether or not brought to fruition, that the enhancement is meant to address." *Id.* at 1408.

In our case, it was equally reasonable for the court to conclude that Hernandez would have kept the proceeds from the sale of his cars found at his brother's business by the case agent. According to the PSI, Hernandez had engaged in an eighteen-month scheme to defraud the bankruptcy court in a multitude of ways. In light of his other efforts to defraud the bankruptcy court, his failure to disclose his intent to sell the cars, and his placement of the cars on his brother's

property rather than his own (evidence of his intent to hide the sale of the cars), the court could conclude that Hernandez would have concealed the proceeds from the sale of the cars.

As to Hernandez' argument that he did not own the vehicles, it was not unreasonable for the district court, in light of the case agent's testimony, to conclude that either Hernandez or a corporation in which he was the primary (if not sole) equity holder owned the vehicles. At any rate, "ownership" is irrelevant in this case. It clearly was reasonable for the district court to conclude that, regardless of ownership, Hernandez personally would have received income from the sale of the vehicles, and that he thereafter would have concealed that income from the bankruptcy trustee. Therefore, the district court did not err by including the proceeds from the auction of the vehicles in the total loss calculation for purposes of determining Hernandez' base offense level.

C.

Third, Hernandez claims that the district court erred in denying a two point downward adjustment to his offense level pursuant to U.S.S.G. § 3E1.1(a) for his acceptance of responsibility. "Whether a defendant is entitled to a sentence reduction for acceptance of responsibility is a factual determination that must be affirmed on appeal unless clearly erroneous." *United States v. Hromada,* 49 F.3d 685, 688-89 (11th Cir.1995).

Hernandez pled guilty to the bankruptcy fraud, and he "comfortably accepted responsibility for the counts of the conviction," according to the PSI. Based on these facts, Hernandez argues that he fulfilled the requirements of acceptance of responsibility necessary for a downward adjustment. The PSI, however, recommended that the court not grant the two point downward adjustment for acceptance of responsibility because Hernandez failed to answer specific questions about how he carried out the fraud; in fact, he "denied the manner in which the fraud was perpetrated."

8

Hernandez argued before the sentencing court that he was unable because of his limited intelligence to recall the details of his criminal conduct—a limitation that prevented him from answering the inquiries of the probation officer. To support this assertion, Hernandez offered the testimony of a psychiatrist, Dr. Selma DeJesus-Zayas. Dr. DeJesus-Zayas testified that Hernandez had an I.Q. of 84, and that he had a particular inability to pay attention to detail. Dr. DeJesus-Zayas concluded that the incomplete responses Hernandez gave to the probation officer regarding his specific conduct were consistent with this inability. On cross-examination, however, Dr. DeJesus-Zayas conceded that Hernandez would have been aware of his conduct if he had altered invoices in his business or if he had failed to report money he received from customers. Dr. DeJesus-Zayas further agreed that Hernandez had a tendency to lie at times.

Whether to grant a downward adjustment based on acceptance of responsibility is a matter committed to the district court's discretion. *See United States v. Thompson,* 976 F.2d 666, 673 (11th Cir.1992). In particular, we have held that a sentencing court may deny the two point reduction when the defendant "denies relevant conduct which the court finds to be true," because that denial is "inconsistent with the acceptance of responsibility." *United States v. Diaz,* 138 F.3d 1359, 1364 (11th Cir.1998). Applying these principles to our case, it was not clear error for the district court to deny the two point adjustment to Hernandez because he denied certain parts of his bankruptcy fraud and refused to answer specific questions about other conduct that he had admitted. Even his own expert witness testified that Hernandez would be aware of the conduct about which he was questioned, if he in fact engaged in such conduct.

How much weight to place on the testimony of Dr. DeJesus-Zayas, and on the contentions of the defense that Hernandez had done all he could given his limited intelligence, are factual

9

determinations. We find ample evidence in the record to support the district court's denial of a two point reduction for acceptance of responsibility, and therefore affirm the district court's decision.

D.

Hernandez next argues that the district court erred by using an upward departure to raise his criminal history category under the Sentencing Guidelines from a category I to a category II. We review the district court's departure for abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 91, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996). This review involves a three-part inquiry. "First, we deferentially review the district court's determination of whether the facts of a case take it outside the heartland of the applicable guideline." *United States v. Hoffer,* 129 F.3d 1196, 1201 (11th Cir.1997). Next, we determine whether the departure factor upon which the district court relied "has been categorically proscribed, is encouraged, encouraged but taken into consideration within the applicable guideline, discouraged, or not addressed by the [Sentencing] Commission." *Id.* Finally, we review deferentially the remaining factual issues, including whether the factor relied on by the court to depart upward is present to such a degree as to warrant an upward departure. *See id.; see also United States v. Miller,* 146 F.3d 1281, 1284 (11th Cir.1998).

In departing upward pursuant to U.S.S.G. § 4A1.3 with respect to Hernandez' criminal history category, the district court concluded that "the defendant's Criminal History Category I under-represents the seriousness of the defendant's criminal history and the likelihood that he will commit further crimes." Specifically, the court identified three incidents of deposit account fraud, for which Hernandez was not convicted, and a fraud Hernandez committed "in violation of the Fair Labor Standards Act while perpetrating the instant offense," as conduct justifying the upward departure. The court found that this conduct was "similar to that of the instant offense." According

10

to the court, the fact that this similar conduct did not result in points used to calculate Hernandez' criminal history category caused that category to under-represent his prior record and his likelihood of recidivism.

Sentencing Guidelines section 4A1.3 permits a court to impose "a sentence departing from the otherwise applicable guideline range" if there is reliable evidence that indicates that the defendant's criminal history category does not adequately reflect his likelihood of recidivism or the seriousness of his prior criminal conduct. U.S.S.G. § 4A1.3. Among other things, the court may consider: (1) "prior similar misconduct established by a civil adjudication"; (2) "whether the defendant was pending trial or sentencing on another charge at the time of the instant offense"; and (3) "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(c)-(e).

Hernandez argues that the conduct the district court relied upon in making the upward departure was not established by reliable information and was not "similar" for purposes of U.S.S.G. § 4A1.3(c) and (e). The probation officer based his recommendation of an upward departure in part on "a large number of customer complaints involving the defendant's verbally abusive and assaultive behavior." Hernandez counters that the information gathered by the probation officer regarding his abusive behavior is not reliable, and that in any case abusive behavior is not similar to the bankruptcy fraud for which he pled guilty. Furthermore, Hernandez argues that the district court improperly relied on his arrest record in departing upward. Finally, Hernandez complains that the court erred in considering his violation of the Fair Labor Standards Act in making the upward departure.

During the pronouncement of the sentence, the district court gave the following justification for the upward departure:

> As discussed in Part B of the presentence report, the defendant was charged with three counts of deposit account fraud, and that was subsequently dismissed. And committed a fraud in violation of the Fair Labor Standards Act while perpetrating the instant offense.
>
> Therefore, since the prior civil adjudication and prior fraudulent conduct which did not result in criminal history points is similar to that of the instant offense, the Court concludes that the defendant's criminal history category under-represents his prior record and likelihood that he will commit future crimes. As such, the Court has determined that the defendant's prior record is more accurately represented at a minimum under Criminal History Category II.

The court did not rely on Hernandez' "alleged abusive conduct" in pronouncing the sentence. Therefore, we need not address his claims regarding the abusive conduct.

Hernandez' arguments with respect to the Fair Labor Standards Act violation and the three counts of deposit account fraud, however, deserve discussion. We first discuss the Fair Labor Standards Act violation. According to the PSI, Hernandez failed to pay his employees in accordance with minimum wage and overtime payment guidelines established pursuant to the Fair Labor Standards Act. The district court issued an order instructing Hernandez to adhere to the terms and conditions of a settlement agreement reached with the Department of Labor regarding that violation. The PSI stated that Hernandez failed to meet the requirements of that settlement agreement.[4] He

---

[4]The record on this issue is sparse. While Hernandez did not object to the court's characterization of the settlement and order as a "civil adjudication," little information exists as to whether this conduct was actually "established by civil adjudication or by a failure to comply with an administrative order." U.S.S.G. § 4A1.3(c). During the sentencing hearing, Hernandez' only objections were that "the information [regarding the Fair Labor Standards Act violation] does not establish nor indicate any criminal misconduct," and that "there are no grounds for an upward departure pursuant to U.S.S.G. § 4A1.3." Only in his brief to this court did he raise any question about the reliability of the PSI's statements. Furthermore, even where Hernandez' brief discusses this civil violation in the context of U.S.S.G. § 4A1.3(c), it makes no mention of the lack of a civil adjudication. Because we conclude, *infra,* both that the court committed error in

12

argues that some of the evidence regarding that conduct is in dispute, and that at any rate it does not reveal any similar criminal misconduct on which to base an upward departure. Hernandez challenges the court's reliance on that conduct because it "neither establishes nor indicates any criminal misconduct." Section 4A1.3(c), however, does not require that the information relied on by the district court establish similar *criminal* misconduct; rather, the court may rely on "*similar misconduct* established by a civil adjudication." (emphasis added). As stated earlier, the phrase "similar misconduct" appears elsewhere in the Sentencing Guidelines. In chapter eight, the Guidelines Manual defines similar misconduct as "conduct that is similar in nature to the conduct underlying the instant offense." U.S.S.G. § 8A1.2 n. 3. The explanatory note states, for example, that Medicare fraud would be misconduct similar to another type of fraud. *See id.* Although the definition originates in a different chapter of the Guidelines Manual, the circumstances are sufficiently analogous to permit its application here.[5]

---

departing upward based on the arrest record and that the error was harmless, we need not further examine the question of whether the district court correctly based its upward departure on the Fair Labor Standards Act violation.

[5]As a general rule, definitions found in § 1B1.1 of the Sentencing Guidelines are applicable to all chapters of the Guidelines. Definitions found in specific chapters, however, "are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis." U.S.S.G. § 1B1.1 n. 2. As such, the definition of "similar misconduct" found in chapter eight, which addresses the sentencing of organizations, does not generally apply to the Sentencing Guidelines. We therefore must examine chapter eight to determine whether its use of that phrase is analogous to chapter four's use of the same phrase. Section 8C2.5(c), entitled "Prior History," reads as follows:

> If more than one applies, use the greater:
>
> > (1) If the organization (or separately managed line of business) committed any part of the instant offense less than 10 years after (A) a criminal adjudication based on *similar misconduct;* or (B) civil or administrative adjudication(s) based on two or more separate instances of *similar*

13

Section 4A1.3(c) by its terms necessarily includes misconduct other than *criminal* misconduct, because *civil* adjudications do not establish *criminal* misconduct. We find it more appropriate to focus on the word "nature" in the definition of similar misconduct. According to the district court, the nature of his conduct in both offenses—the bankruptcy fraud and the violation of labor regulations—was fraud. We must give deference to these factual findings. Because this labor regulations violation was similar to the bankruptcy fraud, it was well within the court's power to consider this violation in departing upward. In fact, civil misconduct is the sort of factor that the Sentencing Commission, in section 4A1.3, suggested courts should use in determining whether the circumstances warrant an upward departure. Therefore, we can find no abuse of discretion in the district court's reliance on this conduct in making an upward departure.

We next review the district court's reliance on the three dismissed counts of deposit account fraud listed in the PSI. In *United States v. Williams,* 989 F.2d 1137, 1142 (11th Cir.1993), we stated that "a district court may not consider "a prior arrest record itself' when departing from the guidelines." (quoting U.S.S.G. § 4A1.3). The facts in *Washington-Williams* indicate that a

---

*misconduct,* add 1 point; or

(2) If the organization (or separately managed line of business) committed any part of the instant offense less than 5 years after (A) a criminal adjudication based on *similar misconduct;* or (B) civil or administrative adjudication(s) based on two or more separate instances of *similar misconduct,* add 2 points.

U.S.S.G. § 8C2.5(c) (emphasis added). Section 4A1.3(c) states: "[Such information about one's prior history may include information concerning] prior *similar misconduct* established by a civil adjudication or by a failure to comply with an administrative order." U.S.S.G. § 4A1.3(c) (emphasis added). Both sections involve "similar misconduct" that lead to a civil adjudication. The use of the phrase "similar misconduct" in § 8C2.5(c) and in § 4A1.3(c) are therefore sufficiently analogous to permit utilization of the definition in our analysis of § 4A1.3(c).

14

sentencing court may rely on a presentence investigative report that lists prior arrests so long as the report recites the facts that prompted the arrest(s). *See id.* Here, in contrast to *Washington-Williams,* the PSI did not provide a factual background for the majority of Hernandez' arrests. In particular, the PSI did not recite the facts on which the three dismissed counts of deposit account fraud were based. Hernandez denied that he engaged in the alleged fraud, and in the face of this denial, the court abused its discretion by imposing an upward departure based on a mere list of arrests.

The court's mistake, however, constituted harmless error. *See* Fed.R.Crim.P. 52(a). To find harmless error, we must determine that the error did not affect the substantial rights of the parties. *See* 28 U.S.C. § 2111 (1994); *United States v. Johns,* 734 F.2d 657, 665 n. 6 (11th Cir.1984). In our case, the probation officer miscalculated Hernandez' criminal history category while preparing the PSI. Had he properly made this calculation, he initially would have placed Hernandez in criminal history category II, thereby eliminating the need for the district court to depart upward. Therefore, no substantial rights of Hernandez were affected through the mistaken upward departure.

Hernandez did not receive any criminal history points in the PSI. According to that report, however, Hernandez pled guilty in May of 1995 to two counts of deposit account fraud, for which he received a twelve month jail term to be suspended upon payment of restitution. Under Sentencing Guidelines section 4A1.2(c)(1), a sentence for an "insufficient funds check" is counted for purposes of criminal history only (1) if the term of the sentence was at least 30 days in jail or the term of probation was at least one year, or (2) that sentence involved an offense similar to the present offense. U.S.S.G. § 4A1.2(c)(1). Here we have both. The twelve month sentence was substantially longer than the thirty day jail term required in section 4A1.2(c)(1). According to section 4A1.2(a)(3), when a sentence is totally suspended, that sentence "shall be counted as a prior

15

sentence under § 4A1.1(c)." Hernandez' sentence for that past offense therefore should have counted towards the present criminal history calculation. Furthermore, the deposit account fraud is similar to the bankruptcy fraud for which Hernandez has pled guilty, thereby satisfying the alternative prong of section 4A1.2(c)(1). Because the conviction for deposit account fraud satisfies either condition required under section 4A1.2(c)(1), Hernandez should have received one criminal history point for the deposit account fraud.[6]

Hernandez also should have received a criminal history point for his 1986 conviction for driving without a license. Under section 4A1.2(c), a sentence for driving without a license shall be counted by a sentencing court if the conduct is similar to that of the instant case or if the sentence was a term of at least 30 days in jail or a term of at least one year under probation. While the conduct—driving without a license—was not similar to bankruptcy fraud, Hernandez was sentenced to one month in jail. This sentence thus satisfies the 30-day jail term requirement.[7] Hernandez therefore should have received a second criminal history point. Two points would have placed him in criminal history category II, and would have eliminated the need for an upward departure. The district court's error in departing upward with respect to Hernandez' criminal history category was therefore harmless, and thus does not necessitate reversal.

III.

---

[6]According to the PSI, Hernandez pled guilty to two different instances of deposit account fraud. For the purposes of the Sentencing Guidelines, however, the two offenses are considered related because they were consolidated for sentencing. *See* U.S.S.G. § 4A1.2(a)(2) & comment. (n.3). Therefore, under the Sentencing Guidelines we treat them as one sentence.

[7]Although Hernandez' sentence for driving without a license was suspended, suspended sentences—as stated earlier—are taken into account when determining the defendant's criminal history category under U.S.S.G. § 4A1.1(c)(1).

16

The judgment of the district court is therefore AFFIRMED.