[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14113
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00020-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Alabama

_____

(June 10, 2005)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Jose Rodriguez appeals his 304-month sentence imposed for conspiracy to distribute and possess with intent to distribute methamphetamine. After review, we vacate his sentence and remand to the district court for resentencing.

## I. BACKGROUND

### A. Guilty Plea

Rodriguez pled guilty to conspiracy to distribute and possess with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846.

Attached to Rodriguez's plea agreement was a "factual resume" containing the facts that Rodriguez admitted as true. According to the factual resume, Rodriguez was part of a methamphetamine distribution conspiracy. Specifically, in October 2001, Kenneth and Debra Parks introduced Rodriguez to Truman Rodney Daniel, a suspected methamphetamine trafficker. The Parkses introduced Rodriguez as their source for methamphetamine in California. At the meeting, which took place in Barstow, California, Daniel purchased one-half pound of methamphetamine from Rodriguez, which Daniel then brought back to Baldwin County, Alabama for distribution.

On October 21, 2002, California law enforcement officers arrested Rodriguez while he was operating a clandestine methamphetamine laboratory in a

shed in Helendale, California. The shed was located beside a house/residence where law enforcement officers found precursor materials used to manufacture methamphetamine. Law enforcement officers also found two cell phones, approximately 1.5 pounds of methamphetamine, digital scales, a large knife, a rifle, and a .40-caliber semi-automatic handgun during a "search of the property." Additionally, there were children in the house at the time of Rodriguez's arrest. The factual resume also stated that the parties agreed that Rodriguez was responsible for 7.5 pounds, or 3.4 kilograms, of methamphetamine.

During the plea colloquy, the district court confirmed that Rodriguez had reviewed the factual resume. Rodriguez acknowledged that he read, understood, and signed the factual resume and that he "did the things that it" said he did. The district court then adjudicated Rodriguez guilty.

## B. PSI and Sentencing

The PSI assessed Rodriguez a base offense level of 34. The PSI also assessed: (1) a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed during the conspiracy;[1] and (2) a six-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(5)(C) because the offense involved

---

[1] Section 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1) (2003).

the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor.[2] After a three-level reduction for acceptance of responsibility, Rodriguez's total adjusted offense level was 39. With a criminal history category of III, Rodriguez's Guidelines range was 324-405 months' imprisonment. The PSI also noted a mandatory minimum sentence of 120 months' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A).

In the district court, Rodriguez objected to both the firearm and endangerment-to-a-minor enhancements. He argued (1) that there was insufficient evidence to support the enhancements, and (2) that application of the enhancements violated his Sixth Amendment rights pursuant to Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004).

Furthermore, at the sentencing hearing, the government did not rely solely on the factual resume to support the two enhancements, but instead called a law enforcement witness to testify. At the sentencing hearing, San Bernadino County Sheriff Deputy Mark Rogers testified that the shed where Rodriguez was found and arrested was located in a rural area about 25 feet from the house/residence.

---

[2]Section 2D1.1(b)(5)(C) provides that "[i]f the offense (i) involved the manufacture of . . . methamphetamine; and (ii) created a substantial risk of harm to the life of a minor . . . increase by 6 levels." U.S.S.G. § 2D1.1(b)(5)(C) (2003). This Court has held that "[a]lthough the district court is not required to identify a specific minor, it must still make a finding that the defendant's actions placed a minor at risk." United States v. Florence, 333 F.3d 1290, 1293 (11th Cir. 2003).

Although Rodriguez was found in the shed, he did not live on the property. Rather, Manuel Torres and Rosa Lacosta lived in the house/residence. Rogers also testified that Lacosta's three-year-old grandson was on the property during the search, and Lacosta informed Rogers that the child was there every afternoon and that other children also stayed at the house.

According to Rogers, Torres was paid money to allow drug manufacturing at the location. Rodriguez told Rogers at the time of arrest that he was there to purchase methamphetamine, but that his fingerprints would be found on one of the containers used to make the methamphetamine. Further, Rogers testified that there was a large dump pit with chemicals in the dirt outside of the shed.

Additionally, Rogers testified that he found the following items in the house/residence during the search: (1) MSM (a common drug cutting agent), (2) Red Devil Lye, (3) linen bed sheets used as a filter, (4) bungee cords, (5) the rifle, and (6) the semi-automatic handgun.

After Rogers's testimony, the district court determined that there was sufficient evidence to support enhancements. As to the firearm enhancement, the district court found that the firearms discovered in the house/residence were related to Rodriguez's manufacture of methamphetamine in the shed. Specifically, the district court stated that "although the lab was out there, there is evidence from

the officer, three or four items found in the house related to the manufacture of methamphetamine." Later, when referring to the shed and the evidence found in the house, the district court stated that "clearly, it's all interwoven."

As to the endangerment-to-a-minor enhancement, the district court determined that there was a substantial risk of danger to the three-year-old child in light of the proximity of the shed and dump pit to the house/residence. Specifically, the district court stated:

> Well, what I picture in my mind's eye . . . is a three year old child standing on the deck of that [house], where the officer was sitting when he was testifying and how long it would take him to walk the thirty feet to the back of this courtroom if somebody turned their attention away from him for a moment. It would take ten seconds and that child could be in that meth lab. So I find there is a substantial risk of danger to a minor, or was, I should say, and hopefully, I mean thankfully it's a was and not an is.

The district court further determined that Blakely did not apply to the Guidelines, and overruled Rodriguez's objections to the enhancements.

The government recommended that Rodriguez be sentenced at the low end of the Guidelines range, and the district court stated that it would do so because, "based on the length of this sentence and all the circumstances, that [it] is appropriate." The district court then sentenced Rodriguez to 304 months' imprisonment and 5 years' supervised release, noting that the sentence

6

"addresse[d] the sentencing objectives of punishment, deterrence and incapacitation."[3]  Rodriguez timely appealed.

## II. DISCUSSION

On appeal, Rodriguez argues that the district court's application of the firearm enhancement and the endangerment-to-a-minor enhancement violated his Sixth Amendment rights pursuant to Blakely.[4]

Because Rodriguez raised his Blakely objection in the district court and in his initial brief on appeal, we review his sentence de novo.  United States v. Paz, – F.3d –, 2005 WL 757876, at *2 (11th Cir. April 5, 2005).

In United States v. Booker, 543 U.S. –, 125 S. Ct. 738 (2005), a majority of the Supreme Court concluded that the mandatory nature of the Guidelines made them incompatible with the Sixth Amendment's guaranty of the right to a jury trial

---

[3]The district court also noted that the 304-month sentence did "not reflect a downward departure from the guideline range [of 324-405 months' imprisonment]."  Rather, the 304-month sentence "takes into account the time during which [Rodriguez was] in California state custody for an offense that has been taken into account in the determination of the offense level of the instant offense" pursuant to U.S.S.G. § 5G1.3(b).

[4]Rodriguez's plea agreement contained a sentence-appeal waiver.  We note that Rodriguez's argument that the district court violated his Sixth Amendment rights as to the endangerment-to-a-minor enhancement arguably is barred by his sentence-appeal waiver.  See United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) ("In summary, the right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement.  Broad waiver language covers those grounds of appeal.").  However, the government does not make this argument on appeal, and thus we decline to address it.  See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) ("[O]ur well established rule is that issues and contentions not timely raised in the briefs are deemed abandoned.").

where "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guity or a jury verdict [was not] admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. As explained in United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005), petition for cert. filed, 73 U.S.L.W. 3531 (No. 04-1148) (Feb. 23, 2005), "[t]he constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guidelines range has been determined."

We first conclude that there was sufficient evidence in the factual resume and from Deputy Rogers's testimony to support the district court's fact-findings as to both the firearm and endangerment-of-a-minor enhancements.[5] The firearms enhancement was based on the rifle and .40-caliber semi-automatic handgun that were found during the search of the property on which Rodriguez was operating the methamphetamine laboratory. According to Deputy Rogers, the firearms were found in the house/residence, the house/residence was 25 feet away from the shed,

---

[5]The government argues that in the factual resume Rodriguez admitted the necessary facts to support the two enhancements. The problem with this argument is that the district court in making its fact-findings relied not only on the factual resume, but also on Rogers's testimony. Thus, we need not reach the issue of whether the factual resume alone was sufficient to support the enhancements because the district court relied on both the factual resume and Rogers's testimony for its fact findings.

and several other pieces of evidence related to the manufacture of methamphetamine were found in the house/residence, including MSM, a common drug cutting agent.

As to the endangerment-of-a-minor enhancement, Rodriguez admitted that children were present in the house/residence. According to Deputy Rogers, Lacosta's three-year-old grandson was on the property during the search, and the child was there every afternoon. Further, the shed was just 25 feet from the house/residence and there was a dump pit filled with chemicals next to the shed. Accordingly, sufficient evidence supported the district court's fact-findings as to the two enhancements.

Further, we conclude that the district court correctly determined the proper Guidelines range for Rodriguez's conviction is 324-405 months' imprisonment. Nonetheless, Rodriguez's Sixth Amendment rights were violated because Rodriguez's sentence was enhanced, under a mandatory Guidelines system, based on facts neither found by a jury nor admitted by Rodriguez in the factual resume. The Sixth Amendment violation stemmed not from the district court's extra-verdict enhancements, but from the district court's use of those extra-verdict enhancements in sentencing Rodriguez in a mandatory Guidelines scheme. Rodriguez, 398 F.3d at 1301.

9

After reviewing the record, we further conclude that the government has failed to meet its burden to show that the constitutional error was harmless. See Paz, 2005 WL 757876, at *2-3.[6] In Paz, which was a Booker constitutional error case, we explained that harmless error analysis puts the burden on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." Id. at *2. Thus, the government must show beyond a reasonable doubt that the mandatory, as opposed to the advisory, application of the guidelines did not contribute to the defendant's sentence. See United States v. Davis, – F.3d – , 2005 WL 1033422, at *1 (11th Cir. May 4, 2005). In the record in this case, there is no evidence indicating what effect, if any, changing from a mandatory to an advisory approach would have had on the district court's sentencing decision. Accordingly, "[w]e simply do not know what the sentencing court would have done had it understood the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a)." Id. at *2. "Therefore, the Government cannot meet its burden of showing that the mandatory application of the guidelines in violation of

---

[6]"To find harmless error, we must determine that the error did not affect the substantial rights of the parties." Paz, 2005 WL 757876, at *2 (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)). "A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt." Id. (internal quotation marks, punctuation and citation omitted).

10

[Rodriguez's] Sixth Amendment right was harmless beyond a reasonable doubt." Id.; Cf. Rodriguez, 398 F.3d at 1301 (applying plain error analysis and stating that because the defendant bore the burden of persuasion and no one could know what would have happened in an advisory system, the defendant could not meet his burden).

Thus, we vacate Rodriguez's sentence and remand for resentencing. On remand, the district court is required to sentence Rodriguez under an advisory Guidelines regime, and shall consider the Guidelines range of 324-405 months' imprisonment and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.[7]

**VACATED AND REMANDED FOR RESENTENCING**

---

[7]We do not mean to imply that on remand the district court must impose a lesser sentence. On remand, the district court may impose the same sentence. Rather, we merely hold that the government has failed to meet its burden to show that the Booker constitutional error of sentencing under a mandatory Guidelines regime was harmless. Additionally, we do not know exactly what sentence the district court will impose on remand after consulting the § 3553(a) factors. We will not attempt to decide now whether a particular sentence below the Guidelines range might be reasonable in this case. If there is an appeal of the actual post-remand sentence which raises that issue, we can decide it then.