[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14383

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 24, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00059-CR-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TARA L. MCGAVAN,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

**(June 24, 2005)**

Before BLACK and HULL, Circuit Judges, and HODGES[*], District Judge.

PER CURIAM:

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of
Florida, sitting by designation.

After pleading guilty, Tara L. McGavan appeals her concurrent 24-month sentences for: (1) conspiracy to distribute, dispense and possess with intent to distribute and dispense oxycodone, hydrocodone, fentanyl, morphine, methadone and alprazolam, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (D), and 846; and (2) unlawfully dispensing oxycodone, in violation of 21 U.S.C. § 841(b)(1)(C).  After review and oral argument, we affirm.

## I. BACKGROUND

### A.  Offense Conduct

The FBI and Bay County, Florida, Sheriff's Office conducted an investigation into the medical practice of Dr. Freddy J. Williams.  The results of the investigation revealed that Dr. Williams provided Defendant McGavan and other patients with prescription medication ("oxycodone") after only a cursory medical examination.  Dr. Williams did not request the patients' medical records, took no x-rays, and did not conduct any tests to determine the patients' medical needs.  Moreover, Dr. Williams enrolled Defendant McGavan into the Patient Assistance Program so that she could receive oxycodone at no cost to her. Defendant McGavan, who was previously addicted to heroin, became addicted to oxycodone.

McGavan shared a residence with another patient of Dr. Williams's, Duane Oxenham. After Oxenham arranged for Greg and Sommer Miller to become patients of Dr. Williams's, the Millers became addicted to oxycodone. Due to the Millers' heavy addiction, Defendant McGavan and Oxenham determined that they should store the Millers' oxycodone in a lock box at McGavan and Oxhenham's residence. By doing this, they could control how much pain medication was distributed to the Millers and prevent the Millers from overdosing on oxycodone.

A federal grand jury charged McGavan, in a 96-count indictment, with conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371 and 1349 (count 1); frauds and swindles, in violation of 18 U.S.C. § 1341 (counts 2-16); health care fraud, in violation of 18 U.S.C. § 1347 (count 17); fraud by wire, radio, or television, in violation of 18 U.S.C. § 1343 (counts 18-32); conspiracy to distribute, dispense and possess with intent to distribute and dispense oxycodone, hydrocodone, fentanyl, morphine, methadone and alprazolam, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (D), and 846, (count 33); selling, distributing, or dispensing controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) & (D), and 846 (counts 65, 68, 70-71, 77, 83-84); and knowingly distributing oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(C) (count 93).

B.     McGavan's Guilty Plea

Prior to Defendant McGavan's guilty plea, the government submitted a written statement of facts, wherein it stated that McGavan was responsible for 25,700 pills of oxycodone. At her change of plea hearing, McGavan pled guilty, pursuant to a plea agreement, to counts 33 and 93, and the government agreed to drop all the remaining charges. During the plea colloquy, McGavan admitted that the government was correct in stating that she was responsible for 25,700 pills. However, no mention was made as to the dosage of any of the 25,700 pills.

In the PSR, the probation officer calculated the drug quantity McGavan would be responsible for based on the prescription records from Dr. Williams' office issued to her and to the Millers. Based on the number of pills and dosage amounts reportedly shown in the prescription records, the probation officer concluded that McGavan was responsible for 36,738 pills of oxycodone with the following dosage levels:

> Pills prescribed to McGavan
> 1) 13,220 pills of oxycodone at the 5 mg quantity. These pills weigh 100 mg per unit. This calculates to 1,322 grams of oxycodone.
> 2) 2,304 pills of oxycodone at the 40 mg quantity. These pills weigh 135 mg per unit. This calculates to 311.04 grams of oxycodone.
> 3) 12,434 pills of oxycodone at the 80 mg quantity. These pills weigh 280 mg per unit. This calculates to 490 grams of oxycodone.
> Pills prescribed to the Millers
> 1) 4,900 pills of oxycodone at the 5 mg quantity. These pills weigh 100 mg per unit. This calculates to 490 grams of oxycodone.

2) 390 pills of oxycodone at the 40 mg quantity. These pills weigh 135 mg per unit. This calculates to 52.65 grams of oxycodone.
3) 3,430 pills of oxycodone at the 80 mg quantity. These pills weigh 280 mg per unit. This calculates to 960.4 grams of oxycodone.
4) 60 pills of oxycodone at the 160 mg quantity. These pills weigh 520 mg per unit. This calculates to 31.2 grams of oxycodone.

The defendant was held accountable for a total of 6,648.81 grams of oxycodone. According to the 2002 Guidelines, one gram of oxycodone equals 500 grams of marijuana. Therefore, the defendant was held responsible for 3,324.41 kilograms of marijuana. Based on this drug amount, the PSI calculated a base offense level of 34, and with a three level reduction for acceptance of responsibility, McGavan's total offense level was 31. With a criminal history category of III, McGavan's guideline range was 135-168 months' imprisonment.

McGavan objected to the PSR on the grounds that pursuant to <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), a jury, not a judge, was responsible for determining drug quantities, and that she was thus not admitting to the number of pills or dosages. Specifically, McGavan objected as follows:

> In calculating the base offense level in the Pre-Sentence Investigation Report, the Defendant objects to both the number of pills she is charged with as well as the dosage amounts. The Supreme Court recently held that a defendant's maximum sentence must be based solely on the basis of the facts reflected in a jury verdict or admitted by the defendant. See *Blakely v. Washington*, 124 S. Ct. 2531. In this case, there are not jury findings relating to the Defendant and the Defendant has only admitted to an amount of 25,700 pills of unknown dosage as specified in the

5

Statement of Facts supporting her Plea and Cooperation Agreement, as opposed to the 36,738 pills with specific dosages listed in the Pre-Sentence Report. No admission regarding the weight or milligrams of any pills was made nor can one be presumed or attributed.

**District Court Docket #116.**[1]

C.      Sentencing

The district court concluded that <u>Blakely</u> did not apply to the federal Sentencing Guidelines and "adopt[ed] the factual findings and guideline application in the Presentence Report." However, the district court granted the government's § 5K1.1 motion, finding that McGavan provided substantial assistance, and determined that McGavan was entitled to a departure below the low end of the guidelines. The district court noted that McGavan's guideline range was 135-168 months' imprisonment, but that her substantial assistance warranted a 24-month sentence on each count to run concurrently. After sentencing McGavan to 24 months' imprisonment, the district court stated:

---

[1] The probation officer summarized the objection in the PSR as follows:
Charles Williams and Rhonda S. Clyatt, appointed counsel, have made one objection to the presentence report in a motion filed on July 27, 2004. The objection relates to the drug weight accountability for the defendant. The defense contends the defendant admitted to only 25,700 pills of an unknown dosage. The presentence report lists 36,738 pills at various specified pill weights. The defense states that in light of <u>Blakely v. Washington</u>, 124 S. Ct. 2531, the defendant should not be held accountable for the weights established in the presentence report because those facts were not presented to or established by a jury.

6

Although significantly below the minimum of the calculated sentencing range, I do find that this term of imprisonment is sufficient to punish you for your conduct, Ms. McGavan, as well as to deter others who might engage in similar-type conduct. I have carefully considered the factors set out in 18 U.S.C. § 3553A including the applicable guidelines and policy statements issued by the Sentencing Commission.

One of the reasons I've sentenced you to 24 months is so that you can participate in a residential drug abuse treatment program that is offered in the Bureau of Prisons, and I do want you to participate in that. I do find that you should be eligible for that based on your history, your substance abuse history, and I do hope that you will participate fully in that program, take it seriously and if you do, I do believe you will benefit from that.

McGavan appeals.

## II. DISCUSSION

McGavan argues that the district court erred under United States v. Booker, 125 S. Ct. 738 (2005), when it enhanced her sentence based on facts that were not charged in the indictment and that she did not admit. Specifically, McGavan points out that she did not admit to either the additional pills of oxycodone or to the dosage of any of the pills.

In Booker, the Supreme Court concluded that Blakely applied to the Sentencing Guidelines. United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir. 2005), cert. petition filed, 73 USLW 3531 (Feb. 23, 2005) (No. 04-1148). Under Booker, "there are two kinds of sentencing errors: one is constitutional and the other is statutory." United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005).

7

"[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." Rodriguez, 398 F.3d at 1298. The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

We first conclude that based on the prescription records the district court correctly determined both drug quantity and guideline range. Nonetheless, McGavan's Sixth Amendment rights were violated because McGavan's sentence was enhanced, under a mandatory guideline system, based on facts neither found by a jury nor admitted by her.[2] Specifically, the district court held McGavan responsible for 36,738 pills of oxycodone of various dosages even though McGavan admitted to only 25,700 pills of oxycodone of an unspecified dosage.

[2] As noted earlier, the number of pills and their respective dosages were obtained from available prescription records from Dr. Williams's office. The defendant does not contend, either before the district court or this Court, that the PSR inaccurately described the prescription records obtained from Dr. Williams's office. Furthermore, the defendant does not dispute the PSR's conversion of oxycodone into an equivalent amount of marijuana.

Nonetheless, the defendant consistently made it clear that she was not admitting to those amounts. While the amounts in the prescription records were sufficient to sustain the district court's fact findings as to drug quantity, McGavan still did not admit those amounts, and thus there remains a Sixth Amendment violation.

The Sixth Amendment violation stemmed not from the district court's extra-verdict enhancements, but from the district court's use of those extra-verdict enhancements in sentencing McGavan in a mandatory guidelines scheme. Rodriguez, 398 F.3d at 1301.

Because McGavan properly preserved her Booker claim in the district court by objecting based on Blakely, we review the defendant's Booker claim de novo and determine whether the error is harmless. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). "To find harmless error, we must determine that the error did not affect the substantial rights of the parties." Id. (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)). "A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt." Id. (internal quotation marks, punctuation and citation omitted).

After reviewing the record, we conclude that the government has met its burden of showing that the Booker constitutional error was harmless. See Paz, 405 F.3d 948-49. In Paz, which was a Booker-constitutional-error case, we explained that harmless error analysis puts the burden on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." Id. at 948 (quotation marks, punctuation, and citation

omitted). Thus, the government must show beyond a reasonable doubt "that the mandatory, as opposed to the advisory, application of the guidelines did not contribute to the defendant's sentence." United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005).

In this case, the district court properly: (1) held McGavan responsible for 36,738 pills of oxycodone of specified dosages; and (2) calculated McGavan's guideline range. The district court, in selecting a 24-month sentence, specifically considered the sentencing factors in § 3553(a), and determined that a 24-month sentence was warranted so that McGavan could participate in drug treatment programs while in prison.[1] Simply put, because the district court granted the government's § 5K1.1 motion, it was not constrained by the mandatory guideline range when it selected a 24-month sentence. Moreover, the magnitude of the downward departure and the reason the district court chose McGavan's particular

_____

[1]In Davis, 407 F.3d at 1271, this Court concluded that "the sentencing court could not permissibly consider the sentencing factors announced in 18 U.S.C. § 3553(a) when exercising is discretion" under § 5K1.1. However, in United States v. Luiz, 102 F.3d 466, 469-70 (11th Cir. 1996), this Court permitted the sentencing court, when exercising its discretion under § 5K1.1, to consider the fact that the defendants were charged "leniently" by the government when compared to their offense conduct described in the PSI. One of the factors listed under 18 U.S.C. § 3553(a) is "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The decision to charge a defendant leniently could certainly be considered within the ambit of "the nature and circumstances of the offense." We need not resolve any arguable tension between Davis and Luiz because it is clear that under Booker a district court may now consider the factors in § 3553(a) and that the Booker error in this case was harmless beyond a reasonable doubt.

sentence demonstrate that any <u>Booker</u> error did not affect the ultimate sentence. Thus, we easily conclude that the government has established that the <u>Booker</u>-error in this case was harmless beyond a reasonable doubt.

AFFIRMED.