[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 1, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16564
Non-Argument Calendar

_____

D. C. Docket No. 06-00104-CR-T-27EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEY K. LANSING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 1, 2008)**

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Joey K. Lansing appeals his conviction and 51-month prison sentence for

one count of conspiracy to defraud the government, in violation of 18 U.S.C. § 286, and three counts of failing to file federal income tax returns, in violation of 26 U.S.C. § 7203. Lansing worked for a company called American Tax Consultants, which filed tax returns for its clients claiming no tax liability under the theory that paying taxes was voluntary on the ground that almost everyone is a non-resident alien. ATC also filed fraudulent returns with the IRS in an attempt to obtain tax refunds for its clients for taxes paid in previous years.

## I.

Lansing contends that the evidence presented at trial was insufficient to support his convictions for conspiring to defraud the government and for failing to file federal income tax returns.

We review de novo sufficiency of the evidence claims. United States v. Anderson, 289 F.3d 1321, 1325 (11th Cir. 2002). This "standard of review is stacked in the government's favor." United States v. Moore, 504 F.3d 1345, 1348 (11th Cir. 2007); see also United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) ("We view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt,

provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." (internal citations and quotation marks omitted)).

A.

Lansing argues that the district court erred in denying his motion for judgment of acquittal on the conspiracy to defraud the government charge because the government did not show that there was an agreement between Lansing and any co-conspirator to defraud the government. At most, according to Lansing, the government showed that there was an agreement to defraud ATC's clients.

To establish that a defendant has conspired to defraud the United States, the government must prove: (1) the existence of an agreement to defraud the United States by obtaining payment of a false claim; and (2) the defendant's knowing and voluntary participation in the conspiracy. United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006). "Conspiracy may be proven by circumstantial evidence and the extent of participation in the conspiracy or extent of knowledge of details in the conspiracy does not matter if the proof shows the defendant knew the essential objective of the conspiracy." Id. at 1194 (internal punctuation and citation omitted).

In United States v. Adkinson, 158 F.3d 1147, 1155 (11th Cir. 1998), we addressed the issue of whether the government had presented sufficient evidence of

3

intent to defraud the IRS, as opposed to only the defendants' customers, in the context of 18 U.S.C. § 371. We noted that an intent to impede the IRS must be a purpose of the conspiracy, not just a collateral effect of the agreement. Id. However, a conspiracy may have multiple objectives, and if a minor one is to defraud the government, the offense is proven even if there is a larger, primary objective. Id. We concluded that the bank fraud conspiracy charged in the indictment, which involved a money-laundering scheme, was the focus of the conspiracy, and we reversed the defendants' convictions on the tax fraud count because the government did not prove a "tax purpose" necessary to support a conviction for tax fraud. Id. at 1156, 1159.

Here, the district court did not err in denying Lansing's motions for acquittal on the charge of defrauding the government because the evidence, taken in the light most favorable to the government, established that ATC's clients did not pay federal taxes and routinely filed returns in an attempt to obtain refunds for payment of previous years' taxes. This shows that defrauding the government was at least a minor objective of the larger conspiracy to defraud ATC's clients, which is sufficient to sustain Lansing's conviction.

### B.

Lansing also argues that the district court erred in denying his motion for

judgment of acquittal on the failure to file tax returns charge because he claims to have relied on the advice of a CPA who told him not to file and asserts, without support, that the testimony of the IRS agent, who established that Lansing made enough income to require the filing of a tax return, was not based on a recognized legitimate accounting technique.

26 U.S.C. § 7203 criminalizes the willful non-filing of federal tax returns. The willfulness element of § 7203 can be negated by a "good-faith misunderstanding of the law or a good-faith belief that one is not violating the law." Cheek v. United States, 498 U.S. 192, 199–202, 111 S. Ct. 604, 609–11 (1991). To show willful action, the government must demonstrate that the defendant intentionally violated a known legal duty. United States v. Pomponio, 429 U.S. 10, 12, 97 S. Ct. 22, 23 (1976). Where, as is the case here, the defendant testifies, the jury is free to disbelieve that testimony and it "may be considered as substantive evidence of the defendant's guilt." United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

We conclude that the district court did not err in denying Lansing's motion for acquittal on the willful non-filing of tax returns counts because the evidence, taken in the light most favorable to the government, established that Lansing's income during the years in question far exceeded the threshold amounts that

require a citizen to file a return. The jury was free to reject Lansing's testimony and decide that he knew that he had to file tax returns for those years.

**II.**

Lansing next contends that the district court erred in giving the pattern instruction on his good faith defense where, as here, the IRS is the alleged victim, because the instruction allowed the jury to convict him of conspiring to defraud the IRS if the jury found he defrauded third party taxpayers with regard to a "business venture."

We review de novo jury instructions "to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002) (internal quotation marks omitted). "Under this standard, we will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." United States v. Puche, 350 F.3d 1137, 1148 (11th Cir. 2003). "When the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism." United States v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996). We presume that jurors follow the instructions given to them. United

6

States v. Chandler, 996 F.2d 1073, 1088 (11th Cir. 1993).

The district court's instructions do not justify reversal of Lansing's convictions because even if the specific clause mentioning a "business venture" was confusing to the jury, the instructions, taken as a whole, accurately express the law. Lansing has not clearly articulated how the instruction that he focuses on, even if it should not have been given to the jury in light of the evidence presented at trial, prejudiced him in any way. Because Lansing has not shown prejudice, and because the rest of the instructions the district court gave accurately described the law, we are not left with the "substantial and eradicable doubt" necessary to order a new trial. See Puche, 350 F.3d at 1148.

## III.

Lansing also contends that the district court erred in failing to dismiss the indictment against him due to a violation of Kastigar v. United States, 406 U.S. 441, 92 S. Ct. 1653 (1972), on the ground that the evidence at trial left some confusion regarding whether tapes of conference calls that were relied upon by the government before the grand jury were part of a proffer Lansing had made under an agreement to cooperate with the government.

We review Kastigar claims deferentially and affirm the district court's decision unless it is clearly erroneous. United States v. Nyhuis, 8 F.3d 731, 741

(11th Cir. 1993). Under clear error review, we will affirm the district court's decision so long as it "plausible in light of the record viewed in its entirety." Merrill Stevens Dry Dock Co. v. M/V Yeocomico II, 329 F.3d 809, 816 (11th Cir. 2003).

When the government prosecutes a witness who previously has given self-incriminating testimony pursuant to a grant of immunity, it must establish that the evidence is derived from a legitimate source that is independent of the compelled testimony. Kastigar, 406 U.S. at 460, 92 S. Ct. at 1665. However, when the United States has reserved the right to make derivative use of statements and information provided by the defendant in the cooperation agreement, as it did in Lansing's case, such use does not violate the defendant's rights. United States v. Pielago, 135 F.3d 703, 709–10 (11th Cir. 1998). Here, the district court did not clearly err in refusing to dismiss Lansing's indictment because the government showed that the tape was delivered to the IRS by another witness and was, therefore, not part of Lansing's original proffer to the government. Accordingly, there was no Kastigar violation.

## IV.

Finally, Lansing contends that the district court improperly applied an 18-level enhancement to his sentence because the government did not show that there

was any intended loss to the IRS, only to the clients of ATC.

We review the district court's determination of the amount of loss for clear error. United States v. Hernandez, 160 F.3d 661, 666–67 (11th Cir. 1998). Under United States Sentencing Guidelines § 2B1.1(b)(1) (Nov. 2006), the defendant's offense level is enhanced if the loss exceeded $5,000, with the extent of the enhancement determined by the amount of the loss. For these purposes, the loss is either the actual loss or the intended loss, whichever is greater. U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A). An intended loss includes "intended harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A)(ii). Although an intended loss must be determinable to a reasonable certainty, it may be an estimate. Hernandez, 160 F.3d at 666. An 18-level enhancement is appropriate where the intended loss is greater than $2.5 million, but less than $7 million. U.S.S.G. § 2B1.1(b)(1)(J), (K).

The district court did not err in its determination that there was an intended loss of more than $2.5 million because the government established that ATC's clients had sent in returns claiming over $5 million in refunds. This finding was based on testimony presented at trial and at the sentence proceeding showing that ATC had flooded IRS offices with multiple fraudulent returns on behalf of its clients. Although most of the clients received no refund from the IRS, at least a

9

few did, and ATC's agreement with its client entitled it to a share of any refund received. On the basis of that evidence, it was reasonable for the district court to find that ATC intended to cause a substantial loss, even if the likelihood of succeeding in its endeavor was small.

**AFFIRMED.**